**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH A. CHARLES, : | |
| : | Civil No. 07-1368 (RMB) |
| Petitioner, : | |
| : | |
| v. : | |
| : | **OPINION** |
| CHARLES SAMUELS, JR., : | |
| : | |
| Respondent. : | |

**APPEARANCES:**

    JOSEPH A. CHARLES, Petitioner pro se
    #21508-038
    F.C.I. Fort Dix
    East P.O. Box 2000 - West P.O. Box 7000
    Fort Dix, New Jersey 08640

    IRENE E. DOWDY, ESQ.
    OFFICE OF THE U.S. ATTORNEY
    402 East State Street, Suite 430
    Trenton, New Jersey 08608

**BUMB, District Judge**

    Petitioner, Joseph A. Charles, is a federal prisoner currently confined at the Federal Correctional Institution in Fort Dix, New Jersey. He has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] seeking derivative

---

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. ...
(c) The writ of habeas corpus shall not extend to a

citizenship pursuant to 8 U.S.C. § 1431(a)(1)(2)(B). The named respondent is Charles E. Samuels, Jr., Warden at FCI Fort Dix. This Court has reviewed the petition, as well as the motion to dismiss filed by respondent, and petitioner's objections thereto. For the following reasons, the Court will grant respondent's motion and the petition for a writ of habeas corpus will be dismissed.

## I.   BACKGROUND[2]

Petitioner, Joseph A. Charles ("Charles"), is a native of Liberia. Both his mother and father also were Liberian nationals at the time of Charles' birth on June 15, 1970. Charles claims that he arrived in the United States in April 1985, as a permanent resident alien. He further asserts that he was in his father's custody, and that his father became a naturalized citizen of the United States before Charles was born. His parents were legally married.

In his petition, Charles asserts that he is entitled to derivative citizenship through his father, pursuant to 8 U.S.C. § 1431(a), or Section 320 of the Immigration and Nationality Act ("INA"). He sent two letters to the Department of Homeland

---

      prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

  [2]  The factual and procedural history are taken from the petition and its attachments, as well as from respondent's motion to dismiss and the relevant administrative record.

Security's ("DHS") Office of U.S. Citizenship and Immigration Services ("USCIS"),[3] in Philadelphia, Pennsylvania, requesting that the USCIS investigate petitioner's claim to derivative citizenship.  Charles has not received any response to the two letters.

Charles also states that he had asked Bureau of Prisons ("BOP") staff members at FCI Fort Dix to help him schedule an appointment with an immigration officer concerning his immigration status.  He received no response.  Charles complains that his alien status prevents him from participating in the Community Correction Center ("CCC") program and other programs offered by the BOP to U.S. citizen inmates.

Charles' projected release date from his federal prison sentence is October 9, 2007.  He does not allege that he has been placed in removal proceedings, and respondent reports that Charles' "A" file confirms that no removal proceeding has been instituted against him.  The "A" file also shows that no

---

[3]  Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Services ("INS") was abolished.  On March 1, 2003, most of the functions of the INS were transferred to the Department of Homeland Security ("DHS").  See Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 Fed. Reg. 10922 (March 6, 2003).  Three departments within the DHS assumed the INS's responsibilities: (a) U.S. Citizenship and Immigration Services ("USCIS") has taken on the INS's immigration benefit services; (b) U.S. Immigration and Customs Enforcement ("ICE") has assumed the INS's law enforcement functions; and (c) U.S. Customs and Border Protection ("CBP") has taken the border patrol.

administrative claim of citizenship has been filed with the DHS or its predecessor, the INS.  Charles concedes that he has not submitted a Form-600 Application for a Certificate of Citizenship.

Respondent confirms that Charles is not eligible for CCC placement or other similar transitional placement programs because Charles is assigned a Public Safety Factor ("PSF") of "deportable alien", pursuant to BOP Program Statement 5100.07, *Security Designation and Custody Classification Manual.*  Further, BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures,* provides that a Unit Team is not to recommend CCC placement for an inmate with a deportable alien PSF status.

## II.  ANALYSIS

### A.  Standard of Review

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

4

B.   <u>Jurisdiction Lacking Over Petitioner's Claim</u>

Petitioner claims that he became a citizen pursuant to his father's naturalization. He asks this Court to grant him derivative citizenship status. There are no allegations in the petition, or in respondent's motion to dismiss, that Charles is subject to removal from the United States, or that he has been noticed for removal proceedings. Charles does allege, however, that his status as an alien is affecting his classification status and eligibility for certain programs as a prisoner at FCI Fort Dix.

There are two ways by which Charles may seek judicial review of his derivative citizenship claim. First, "where an individual is subject to removal proceedings, and a claim of derivative citizenship has been denied [in the removal proceedings], that individual may seek judicial review of the claim only before the appropriate court of appeals, not a district court." <u>Henriquez v. Ashcroft</u>, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003)(citing 8 U.S.C. § 1252(b)(5)); <u>see also</u> <u>Rivera-Martinez v. Ashcroft</u>, 389 F.3d 207, 208-10 (1st Cir. 2004)(holding that alien cannot pursue derivative citizenship claim in a § 2241 habeas action because § 1252(b) establishes a specific statutory process for such claims), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005); <u>McKenzie v. INS</u>, No.Civ.A. 04-1001, 2005 WL 452371 (E.D. Pa. Feb. 23, 2005). Here, as noted above, there are no allegations that Charles is

subject to removal proceedings, or that he applied for derivative citizenship in removal proceedings.

Second, Charles may file an Application for Certificate of Citizenship (Form N-600) with the USCIS.  8 C.F.R. § 341.1.  The applicant may appeal the denial of an application for a certificate of citizenship to the Administrative Appeals Unit (AAU).  8 C.F.R. § 322.5(b).  In certain circumstances, an applicant whose appeal is denied by the AAU is entitled to bring an action in federal district court seeking a declaratory judgment of citizenship.  See 8 U.S.C. § 1503(a).  This statute requires that the administrative denial be final.  Charles admits, and respondent confirms, that petitioner has not filed an "Form N-600" application for derivative citizenship.  Thus, there is no allegation that there has been an administrative denial of Charles' derived citizenship claim.

As illustrated above, federal statute and regulations provide an administrative process for aliens to apply for derivative citizenship and appeal an unfavorable determination.  8 U.S.C. § 1452(a); 8 C.F.R. §§ 341.1, 103.3(a).  See Ewers v. INS, 2003 WL 2002763, *2 (D.Conn., Feb. 28, 2003).  Moreover, federal law requires that the alien exhaust all available administrative remedies before seeking judicial review with respect to a claim of citizenship, whether it is raised in a removal proceeding or through the filing of an application for

6

declaration of citizenship.  See 8 U.S.C. § 1252(b); 8 U.S.C. § 1503(a); see also Massieu v. Reno, 91 F.3d 416, 426 (3d Cir. 1996); United States v. Breyer, 41 F.3d 884, 891-92 (3d Cir. 1994)(§ 1503(a) requires a "final administrative denial" before commencing an action for a declaratory judgment); McKenzie v. INS, 2005 WL 452371, *4 (E.D.Pa., Feb. 23, 2005); Ewers, supra.  This exhaustion requirement is jurisdictional.  See Duvall v. Ellwood, 336 F.3d 228, 233 (3d Cir. 2003); Breyer, 41 F.3d at 891-92.

Here, Charles did not raise his derivative citizenship claim in removal proceedings, because, as of this date, there are no removal proceedings initiated against petitioner.  However, even if Charles had properly raised his derivative citizenship claim in removal proceedings and fully exhausted his administrative remedies, the proper forum for seeking judicial review of his claim would be the United States Court of Appeals for the judicial circuit where the removal proceedings occurred, and not this District Court.

Moreover, as Charles admits, he has not applied for a certificate of citizenship by filing a Form N-600 application with the CIS.  Rather, he alleges that he has sent two letters to the USCIS, and has not received any response to his applications.  Thus, there is no administrative determination with respect to Charles' claim of citizenship for this Court to review and

7

petitioner has not availed himself of the administrative process necessary to a claim of citizenship. Therefore, this Court lacks subject matter jurisdiction to adjudicate Charles' claim of derivative citizenship. Accordingly, the petition for habeas relief under § 2241 will be dismissed without prejudice.

C.  <u>Alien Status Precludes Participation in BOP Programs</u>

Finally, Charles argues that his alien status affects his eligibility to participate in a CCC placement program and other BOP programs open to U.S. citizen inmates. Such claim does not establish an infringement of a legally protected interest or right.

In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montayne v. Haymes</u>, 427 U.S. 236, 243 (1976); <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). <u>See also</u> <u>Sandin v. Connor</u>, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met); <u>Walker v. Hughes</u>, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."). Thus, to the extent that Charles complains that his alien status limits his placement or transfer to a CCC or halfway house, or other BOP programs, he does not have a cognizable liberty interest in such a transfer or placement. Therefore, there is no basis for federal habeas relief on this claim.

### III.  <u>CONCLUSION</u>

For the reasons set forth above, the petition will be dismissed without prejudice for lack of jurisdiction at this time. Alternatively, the petition fails to state a claim with respect to Charles' contention that his alien status prevents his

participation in certain BOP programs.  An appropriate order follows.

                                                 s/Renée Marie Bumb
                                                 RENÉE MARIE BUMB
                                                 United States District Judge

Dated: June 8, 2007